LYTELL HUDGINS,

        Petitioner,

                                                Case No. 11-cv-15376

v.

                                                HON. MARK A. GOLDSMITH

MARY BERGHUIS,

        Respondent.

_____/

**OPINION AND ORDER
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 16), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Terrence Fomby filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his Wayne County Circuit Court conviction for armed robbery, Mich. Comp. Laws § 750.529; carjacking, Mich. Comp. Laws § 750.529a; attempted receiving and concealing stolen property more than $20,000, Mich. Comp. Laws § 750.535(2)(a); attempted receiving and concealing a stolen motor vehicle, Mich. Comp. Laws § 750.535(7); and attempted unlawful driving away of an automobile, Mich. Comp. Laws § 750.413.  Petitioner was sentenced to a string of concurrent sentences, the longest of which are two terms of 15-to-30 years for the armed robbery and carjacking convictions.

This case was stayed while Petitioner exhausted his state-court remedies with respect to claims that he did not present to that state courts on direct review.  See 6/10/2013 Op. & Order (Dkt. 11).  Following post-conviction proceedings in the state courts, Petitioner filed an amended petition (Dkt. 16).  The petition and amended petition raise four claims: (i) there was constitutionally insufficient evidence to support Petitioner's carjacking and armed robbery

convictions, (ii) the prosecutor committed misconduct during trial, (iii) Petitioner's trial counsel was ineffective for failing to advise him regarding the elements of carjacking and armed robbery, and (iv) Petitioner's appellate counsel was ineffective for failing to raise Petitioner's ineffective assistance of trial counsel claim.

For the reasons stated below, the Court denies the petition, denies a certificate of appealability, and grants permission to proceed on appeal in forma pauperis.

## I. BACKGROUND

Petitioner was tried twice in relation to allegations that he attempted to rob an undercover police officer who was sitting in his unmarked police car. The jury was hung after the first trial. See Register of Actions at 4, PageID.772 (Dkt. 21-1). At Petitioner's second trial, Detroit Police Officer Joseph Fortier testified that on the evening of June 16, 2009, he was sitting in his unmarked car while he prepared to recover a stolen vehicle. 1/12/2010 Trial Tr. at 7, PageID.308 (Dkt. 6-5). Two other police officers were in the area to assist him. Id. Fortier was seated in the driver's seat when he saw Petitioner approach his vehicle. Id. at 11-12, PageID.312-313. Petitioner "pulled something out and poked it through his shirt in a manner to make it appear it was a gun," which Fortier believed it to be. Id. at 13, PageID.314. Petitioner then tried to pull on the driver's side door of the vehicle. Id. at 16, PageID.317.

Fortier drew his handgun, and Petitioner started to walk away. Id. at 17, PageID.318. Fortier and the two other officers quickly apprehended Petitioner. Id. at 18, PageID.319. Petitioner told Fortier that he was not going to rob him because he saw that Fortier was armed. Id. The officers searched Petitioner and found a metal garage door roller measuring four and one-half inches long and one and one-half inches in diameter. Id. at 19, PageID.320.

The other two officers' testimony corroborated Fortier's testimony. In particular, Officer

John Berryman testified that he saw Petitioner approach Fortier's car and point what looked like a weapon from underneath his shirt. Id. at 80-81, PageID.381-382. Berryman made eye contact with Petitioner as Berryman exited his vehicle. Id. at 84, PageID.385. He heard Petitioner yell, "Oh shit, that's the police." Id.

Based on this evidence the jury found Petitioner guilty of the charges offenses. After Petitioner was sentenced, he was appointed appellate counsel who filed an application for leave to appeal in the Michigan Court of Appeals, raising two claims: (i) "Defendant-Appellant is entitled to a new trial where there was insufficient evidence to find for the convictions of carjacking and armed robbery," and (ii) "Defendant-Appellant is entitled to a new trial where the prosecutor's closing arguments improperly shifted the burden of proof to Defendant." Appellant Br. at PageID.472 (Dkt. 6-7).

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." People v. Hudgins, No. 299536 (Mich. Ct. App. Feb. 25, 2011). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application by standard order. People v. Hudgins, 803 N.W.2d 327 (Mich. 2011).

Petitioner subsequently filed the instant habeas petition, raising these two claims (Dkt. 1). Respondent filed an answer (Dkt. 5). Petitioner then filed an amended petition and a motion to stay the case in order to exhaust his state court remedies with respect to two additional claims. (Dkts. 8, 9). Respondent did not oppose the motion, and the Court issued an order on June 10, 2013, staying the case, and directing Petitioner to file for post-conviction review in the state courts within 60 days.

Petitioner attempted to file a motion for relief from judgment on August 1, 2013, but for reasons not apparent in the record, it was not docketed by the trial court (Dkts. 12, 16 App'x E).[1] Finally, on April 14, 2014, the motion for relief from judgment was filed in the trial court, raising what now forms Petitioner's third and fourth habeas claims. The trial court denied the motion for relief from judgment, finding that Petitioner failed to demonstrate good cause for failing to raise the claims on direct review and because the claims lacked merit (Dkt. 21-3).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims, but it was denied "for lack of merit in the grounds presented." People v. Hudgins, No. 324862, Mich. Ct. App. Order (Jan. 23, 2015). Petitioner filed an application for leave to appeal this decision in the Michigan Supreme Court, but it was denied under Michigan Court Rule 6.508(D). People v. Hudgins, 871 N.W.2d 178 (Mich. 2015).

On December 15, 2015, Petitioner filed a motion seeking to life the stay (Dkts. 15-16). On March 3, 2016, the Court granted the motion to lift the stay (Dkt. 18). Respondent filed a responsive pleading (Dkt. 20), Petitioner filed a reply (Dkt. 22), and the matter is now ready for decision.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

---

1 Because it is apparent that Petitioner attempted to file his motion for relief from judgment in a timely manner by mailing it to the correct address, and because Respondent has not offered any explanation for why it was not accepted for filing, the Court will consider Petitioner's third and fourth claims despite Respondent's contention that Petitioner did not comply with the terms of the order staying the case.

4

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas

5

court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).

Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

**A. Sufficiency-of-the-Evidence Claim**

Petitioner first claims that constitutionally insufficient evidence was presented at trial to support his convictions for armed robbery and carjacking.

A "daunting, doubly deferential standard of review" applies to a sufficiency-of-the-evidence inquiry on habeas review. Keys v. Booker, 798 F.3d 442, 450 (6th Cir. 2015). First, a reviewing court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Second, even if the reviewing court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, it "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id.

Petitioner presented this claim to the state courts on direct review, and the Michigan Court of Appeals denied relief for lack of merit in the grounds presented. This decision constitutes a merits adjudication that is entitled to AEDPA deference. See, e.g., Hynes v. Birkett, 526 F. App'x 515, 519 (6th Cir. 2013) ("[T]he order of the Michigan Court of Appeals denying [Petitioner's] delayed application for leave to appeal 'for lack of merit in the grounds presented' was an adjudication 'on the merits' under AEDPA"). Thus, Petitioner is not entitled to relief unless the state-court's decision was "contrary to" or resulted in an "unreasonable application of" the clearly established Jackson standard. 28 U.S.C. § 2254(d)(1).

7

Under Michigan law, the elements of armed robbery are: (i) an assault, (ii) a felonious taking of property from the victim's presence or person, (iii) while the defendant is armed with a weapon described in the statute. See Lovely v. Jackson, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (citing Mich. Comp. Laws § 750.529; People v. Allen, 201 Mich. App. 98, 100 (1993)). The second element is satisfied so long as the defendant attempts to take property; he need not succeed. See Mich. Comp. Laws. § 750.530(2) ("[A felonious taking] includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."). The third element is satisfied if the defendant uses an article that is fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon. People v. Ford, 687 N.W.2d 119, 128 (Mich. Ct. App. 2004).

Here, viewed most favorably to the prosecution, sufficient evidence was presented at trial to allow the Michigan Court of Appeals to reasonably reject Petitioner's claim on the merits. As for the assault element, Fortier testified that he saw Petitioner grab something from his waistband and poke it against the inside of his shirt which caused him to believe that Petitioner was pointing a gun at him. 1/12/2010 Trial Tr. at 12-15, PageID.313-316. As for the second element, Fortier testified that Petitioner pulled on the driver's side door handle in an attempt to open the door. Id. at 16, PageID.317. Viewed most favorably to the prosecution, and coupled with the evidence that Petitioner pointed an object from underneath his shirt, this testimony allowed the jury to find beyond a reasonable doubt that Petitioner attempted to take the car from Fortier, but he was foiled both when he found the door was locked and saw that Fortier was armed with a handgun. The third element was satisfied by evidence that Petitioner possessed and employed a metal garage door cylinder in a manner to make it appear that he was armed with a firearm. Id. at 12-13, 15,

80, PageID.313-314, 316, 381.

As for the carjacking conviction, under Michigan law, the elements of the offense are that the defendant: (i) used force, threats, or fear, (ii) intended to take a vehicle from a person in lawful possession, (iii) in that person's presence. People v. Davenport, 583 N.W.2d 919, 921 (Mich. Ct. App. 1998). The same testimony described above from Fortier viewed most favorably to the prosecution allowed a rational finder of fact to conclude beyond a reasonable doubt that Petitioner committed carjacking. Feigning that he was armed with a gun, Petitioner approached Fortier's vehicle and tried to open the door before retreating. This conduct constituted the threatened use of force to take a vehicle from a person in that person's presence. The rejection of this claim by the Michigan Court of Appeals did not constitute an unreasonable application of the Jackson standard. Petitioner's first claim is without merit.

**B. Prosecutorial-Misconduct Claim**

Petitioner's second claim asserts that the prosecutor committed misconduct during closing argument. Specifically, he claims that the prosecutor shifted the burden of proof in her comments. This claim was also presented to the Michigan Court of Appeals during Petitioner's direct appeal and summarily rejected on the merits.

To be entitled to habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012); Gillard v. Mitchell, 445 F.3d 883, 897 (6th Cir. 2006) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). If the misconduct was harmless then, as a matter of law, there was no due-process violation. See Greer v. Miller, 483 U.S. 756, 765 & n.7 (1987). In federal habeas, this means asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

9

Abrahamson, 507 U.S. 619, 623, 637-638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Fry v. Pliler, 551 U.S. 112, 121-122 (2007).

Petitioner asserts that the following statement by the prosecutor rendered his trial unfair by shifting the burden of proof:

> The bottom line here in this case is there's no innocent explanation for Mr. Hudgins taking something out and poking it through his shirt like it's a gun and walking up to a car that's running and going up to that door and trying that door. There's no innocent explanation for that. There's no innocent explanation for him walking away from the car when he sees the officer with a gun and saying I wasn't trying to rob you. Exact words, I wasn't trying to rob you, I saw your gun. And then walking by Officer Burke's car saying, oh shit, it's the police or it's the cops, whatever. There's no innocent explanation for that.

1/12/2010 Trial Tr. at 111-112, PageID.412-413.

The Michigan Court of Appeals did not contravene clearly established federal law by summarily rejecting this claim on the merits. A prosecutor may not shift the burden of proof to the defendant, Patterson v. New York, 432 U.S. 197, 215 (1977), or "suggest that the defendant ha[s] the burden of proof or any obligation to produce evidence to prove his innocence," Joseph v. Coyle, 469 F.3d 441, 474 (6th Cir. 2006) (quoting United States v. Clark, 982 F.2d 965, 968-69 (6th Cir. 1993)). Nor may a prosecutor use a defendant's decision to remain silent as substantive evidence of guilt. Hall v. Vasbinder, 563 F.3d 222, 232 (6th Cir. 2009).

Although the prosecutor commented on the incriminating inferences that could be drawn from Petitioner's actions, the prosecutor did not suggest that Petitioner had the burden of proving his innocence by rebutting those inferences. The prosecutor did not argue that Petitioner did not provide an innocent explanation for his conduct; she argued that there was no innocent explanation. The prosecutor made no suggestion that Petitioner was required to present any evidence in his own defense or disprove his guilt by providing an innocent explanation for his conduct.

In any event, even if the comment unfairly suggested to the jury that Petitioner was required to present evidence, any unfair prejudice was ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. See Hamblin v. Mitchell, 354 F.3d 482, 495 (6th Cir. 2003). Jurors are presumed to follow the court's instructions. See Penry v. Johnson, 532 U.S. 782, 799 (2001) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Accordingly, the state courts did not unreasonably reject Petitioner's prosecutorial misconduct claim, and to the extent the complained-of comments were unfairly prejudicial, the court's instructions prevented the comments from having a substantial and injurious effect or influence in determining the jury's verdict. Brecht, 507 U.S. at 637-638. The claim does not provide a basis for granting habeas relief.

**C. Ineffective-Assistance-of-Counsel Claims**

Petitioner's third claim asserts that his trial counsel was ineffective for failing to inform him that he could be convicted of armed robbery and carjacking even though he did not succeed in taking the car from the officer. Specifically, he asserts that he was offered a plea bargain calling for a 3-to-10 year sentence that he rejected because his attorney misadvised him that he could not be convicted of armed robbery or carjacking because he only attempted to commit those crimes. His related fourth claim asserts that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claim on direct appeal.

In Strickland v. Washington, 466 U.S. 668, 687-688 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (i) that counsel's performance

fell below an objective standard of reasonableness; and (ii) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Nagi v. United States, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. Id. at 691.

Defendants have a right to effective assistance of counsel during the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012). To show prejudice in the context of pleas, "a defendant must show the outcome of the plea process would have been different with competent advice." Id. Specifically, the petitioner must show that there is a reasonable probability that:

> [1] the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164.

Respondent asserts that the trial court made a factual determination that Petitioner's counsel never advised him that he could not be found guilty of the charged offenses based upon a

12

mere attempt to carjack or rob. See Response to Petition at 34-35, PageID.750-751 (Dkt. 20). In denying relief with respect to this claim, after noting that Petitioner supported his allegations with an unsworn affidavit that it would not consider, the state trial court found:

> There is nothing in the record to suggest that defense counsel informed defendant that he would be found innocent because defendant only attempted to commit the crimes and did not have a chance to actually follow through with the carjacking and armed robbery.

Id. at 28 (quoting People v. Hudgins, No. 09-016673-01-FC, Wayne Cir. Ct. Opinion and Order at *2–4 (Aug, 12, 2014)).

In light of the open question regarding whether defense counsel misadvised Petitioner, the Court ordered Respondent to produce and file copies of transcripts from Petitioner's first trial. See 4/24/2017 Order (Dkt. 25). Respondent filed a response indicating that the court reporter notes from the first proceeding cannot be recovered. See 5/24/2017 Resp. (Dkt. 26).

Petitioner's reply to the order is illuminating and helps dispose of the claim. Regarding what occurred at the first trial, Petitioner states the following:

> Mr. Hudgins has talked to several of his family members who were present during all of the trial proceedings. Two of his brothers are willing to testify at an evidentiary hearing on remand; Mr. Eddie Ford and Mr. Leon Glover recall that the trial judge did give instructions to the jury. They also note that on the same day instructions were given by the trial judge, defense trial counsel made a motion for directed verdict based upon counsel's position that the prosecution had not shown that Hudgins committed carjacking and robbery because he only attempted to commit the crime. They recall because Hudgins had showed them where the law supported this position (but neither Hudgins, his brothers or counsel was aware that the law had changed, which is the crux of Hudgins' ineffective assistance claim: his attorney should have known before advising him) they believed themselves that Hudgins would be acquitted. The brothers will also testify that the trial judge denied the motion for directed verdict, noting that the law had recently changed.

Reply to Resp. to Order at 4 (Dkt. 27) (emphasis in original).

According to Petitioner therefore, he knew from what occurred at the close of his first trial

13

that a mere attempt was sufficient to support a conviction for carjacking and armed robbery. It follows that Petitioner's claim must fail under Lafler because Petitioner has failed to show that he relied on his counsel's alleged misadvise as the reason for rejecting the prosecutor's plea offer. Whatever incorrect advice Petitioner's trial counsel gave him prior to his first trial was cured and corrected by the trial court's denial of the motion for directed verdict. After that ruling, Petitioner was no longer operating under misapprehension that his failure to complete the carjacking or robbery was a defense to the charges.

At the beginning of his second trial, defense counsel indicated that his client would reject a plea bargain calling for a 3 to 10 year sentence. 1/11/2010 Trial Tr. at 4, PageID.203 (Dkt. 6-4). The prosecutor indicated that he did not know if his supervisor would even approve such a deal, but that he did not ask for approval because Petitioner indicated that he would reject it. Id. Prior to trial, defense counsel gave an opening statement — not asserting that Petitioner was innocent because he did not complete the larceny — but because "you are going to hear some testimony that is absolutely preposterous." Id. at 95, PageID.294. Following trial, the court instructed the jury on the elements of armed robbery and carjacking, and it instructed them that an attempt to take the automobile away from the victim was sufficient to support the charges. 1/12/2010 Trial Tr. at 134-136, PageID.435-437.

The record, therefore, shows that, at a minimum, Petitioner knew, after his first trial, that he could be convicted of armed robbery and carjacking even though the evidence only indicated that he attempted to take the officer's car. Prior to his second trial, he rejected any plea deal on the record. His defense was not that the prosecutor failed to prove that he completed the larceny of the car; it was that the officers' testimony was not credible. Accordingly, even if the Court accepts as true Petitioner's claim that his counsel misadvised him as to the elements of carjacking

14

and armed robbery before his first trial, he cannot show that he was prejudiced by his counsel's misadvice because any misunderstanding was cured by the trial court's ruling at the close of his first trial. The record shows that Petitioner rejected the notion of negotiating a plea bargain prior to his second trial because he thought he could successfully challenge the credibility of the prosecutor's witness, and not because of erroneous advice given to him prior to his first trial. Petitioner has therefore failed to demonstrate that the state court adjudication of his ineffective assistance of trial counsel claim was unreasonable.

As for Petitioner's related claim regarding appellate counsel, it is not ineffective assistance for appellate counsel to decide not to raise meritless claims. See Smith v. Murray, 477 U.S. 527, 536 (1986); Moore v. Mitchell, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). Petitioner was not denied the effective assistance of appellate counsel because the claim he alleges counsel should have raised is without merit.

Because none of Petitioner's claims merit habeas relief, the petition is denied.

**D. Certificate of Appealability and Proceeding In Forma Pauperis on Appeal**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed

15

further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

It is not reasonably debatable whether the state court adjudication of Petitioner's claims was reasonable. All four of Petitioner's claims are belied by the record. The Court will, therefore, deny a certificate of appealability.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition (Dkt. 16), denies a certificate of

appealability, and grants permission to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: August 27, 2018  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 27, 2018.

s/Karri Sandusky
Case Manager